UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RALPH D. HUSTON & CHRISTINA HUSTON, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-3735 |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court are the following: (1) a motion for summary judgment filed by plaintiffs Ralph D. Huston and Christina Huston (the "plaintiffs") (Dkt. 32); and (2) a cross-motion for summary judgment filed by defendant U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust 2007-WFHE4 ("U.S. Bank"). Dkt. 33. The court has considered the motions, responsive briefing, record evidence, and applicable law. For the reasons that follow, the plaintiffs' motion for summary judgment is **DENIED**, and U.S. Bank's cross-motion is **GRANTED**.

**I. BACKGROUND**

On April 26, 2007, Ralph Huston ("Ralph") obtained a $224,000.00 home equity loan (the "note") from Wells Fargo Bank, N.A. ("Wells Fargo"). Dkt. 33, Ex. A-1 (Texas home equity adjustable rate note) at 1. Under the terms of the note, Wells Fargo had the power to transfer or assign the note. *Id.* at 1 § 1. The note was secured by a Texas Home Equity Security Instrument (the "security instrument"), also dated April 26, 2007, and which was recorded in the Harris County real property records. Dkt. 33, Ex. A-2 (the security instrument). The security instrument was executed by both Ralph and his wife, Christina Huston ("Christina"), and it created a first lien mortgage on their homestead, with the power of sale, to secure payment under the note. *Id.*

Plaintiffs have failed to remit their monthly mortgage payment since November 2009. Dkt. 33, Ex. A (declaration of Michael Dolan) at 3 ¶ 7. On December 13, 2009, Wells Fargo notified Ralph that the note was in default and disclosed its intent to accelerate the note. *Id.* at 3 ¶ 8; Dkt. 33, Ex. A-4 (notice of default). Plaintiffs were given until January 12, 2010 to remit the deficiency and cure the default, but they failed to do so. Dkt. 33, Ex. A at 3 ¶ 8.

On or around February 1, 2010, Wells Fargo assigned the note and security instrument to U.S. Bank. *See* Dkt. 33, Ex. A-3 (assignment). U.S. Bank retained Wells Fargo to be its loan servicing agent for a portfolio of loans, and Wells Fargo is the current servicer of the note. Dkt. 33, Ex. A at 3 ¶ 6. Because plaintiffs were delinquent in their monthly payments, Wells Fargo hired foreclosure counsel, Barrett Daffin Frappier Turner & Engel, L.L.P. ("Barrett Daffin") to begin foreclosure proceedings. *Id.* at 4 ¶ 9. On February 15, 2010, Barrett Daffin sent plaintiffs a letter notifying them that U.S. Bank had elected to accelerate maturity of the debt. *Id.*; *see also* Dkt. 33, Ex. A-5 (acceleration notice). U.S. Bank applied for a home equity foreclosure order, under Rule 736 of the Texas Rules of Civil Procedure, in the 151st District Court of Harris County on March 24, 2010.[1] *See* Dkt. 33, Ex. B (the first Rule 736 application); *In re Order for Foreclosure Concerning Ralph D. Huston & Christina Huston, et al.*, No. 2010-18933 (151st Dist. Ct. of Harris Cnty. filed Mar. 24, 2010). U.S. Bank filed an amended application on May 4, 2010. Dkt. 33, Ex. C (the amended first Rule 736 application).

---

[1] Rule 736 provides an expedited procedure for obtaining a court order to proceed with a foreclosure on a lien securing a home equity loan. *See Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 682 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("As its name suggests, Rule 736 provides a faster, more streamlined alternative to judicial foreclosure."). Once the order is obtained, the lender may proceed with a non-judicial foreclosure under the terms of the lien and the Property Code. *Id.* The home equity foreclosure rules also specify that a lien that can be foreclosed with a Rule 736 order may also be foreclosed by judgment in a suit for judicial foreclosure. TEX. R. CIV. P. 735.3.

In response, the plaintiffs filed an "original answer" asserting various defenses and a plea for abatement and dismissal of the Rule 736 proceeding under Rule 736(10).[2]  *See Huston*, 359 S.W.3d at 680.  On June 27, 2010, plaintiffs filed a counterclaim, challenging U.S. Bank's right to foreclose. Dkt. 33, Ex. D (counterclaim).  Two months later, on August 22, 2010, plaintiffs filed an original petition for declaratory relief with the 80th District Court of Harris County, seeking relief that was identical to the counterclaim in the Rule 736 proceeding.  Dkt. 33, Ex. E (original petition); *Huston v. U.S. Bank Nat'l Ass'n*, No. 2010-52541 (80th Dist. Ct. of Harris Cnty. filed Aug. 22, 2010) (hereinafter "*Huston I*").  After receiving notice of the filing of *Huston I*, the 151st District Court dismissed the entire proceeding without prejudice, including U.S. Bank's application and the plaintiffs' counterclaim.  Dkt. 33, Ex. F.

On November 24, 2010, plaintiffs appealed the dismissal of their counterclaim to the state appellate court.  Dkt. 33, Ex. P (notice of appeal).  On October 27, 2011, the First Court of Appeals affirmed the dismissal of plaintiffs' counterclaim on grounds that a counterclaim cannot be asserted in a Rule 736 proceeding.  *Huston*, 359 S.W.3d at 682–83.  The First Court reasoned that an expedited foreclosure proceeding was legally and practically distinct from a judicial foreclosure suit, in that the court's decision in a Rule 736 proceeding is without preclusive effect and is issued without the benefit of discovery.  *See id.* at 682; TEX. R. CIV. P. 736.9 ("An order is without prejudice and has no res judicata, collateral estoppel, estoppel by judgment, or other effect in any other judicial proceeding."); TEX. R. CIV. P. 736.4 ("No discovery is permitted in a Rule 736

---

[2] Under the rule in effect at the time the answer was filed, a Rule 736 expedited proceeding would be "automatically abated if, before the signing of the order, notice is filed with the clerk of the court in which the application is pending that respondent has filed a petition contesting the right to foreclose in a district court in the county where the application is pending.  A proceeding that has been abated shall be dismissed." Former TEX. R. CIV. P. 736(10).  In 2012, the Texas legislature amended the home equity foreclosure rules, but the substance of this rule was not changed.  *See* TEX. R. CIV. P. 736.11.

3

proceeding."). The court therefore held that a counterclaim was incongruent with the purposes of an expedited proceeding and would not be allowed. *Id.* at 682–83. The court specifically noted that its decision did not deprive the plaintiffs of a right to pursue their claim because the case was dismissed *after* they filed suit in the 80th District Court. *Id.* at 683. "The Hustons may pursue their claim against U.S. Bank in that lawsuit." *Id.*

And so they did. After filing *Huston I*, the plaintiffs served U.S. Bank, which answered the petition with a general denial on September 30, 2010. *Huston I* Dkt. 1, Ex. B-3 (U.S. Bank's original answer). On October 7, 2010, U.S. Bank removed *Huston I* to the Southern District of Texas, Houston Division, Judge Keith Ellison presiding. *Huston I* Dkt. 1. On December 5, 2011, after the First Court of Appeals affirmed the dismissal of the first Rule 736 application and counterclaim, U.S. Bank moved for leave to amend its answer in *Huston I* and assert a counterclaim for judicial foreclosure. *Huston I* Dkt. 13. Judge Ellison denied U.S. Bank's motion on December 14, 2011, finding that the counterclaim was unnecessary for U.S. Bank to receive full relief on the merits in a favorable judgment. *Huston I* Dkt. 17 at 6–7. U.S. Bank therefore never asserted a counterclaim for judicial foreclosure in *Huston I*.

After discovery closed, U.S. Bank moved for summary judgment as to plaintiff's claim for declaratory relief. *Huston I* Dkt. 18. On February 28, 2012, Judge Ellison granted U.S. Bank's motion and dismissed plaintiffs' claim with prejudice. *Huston I* Dkt. 37 at 9. However, Judge Ellison also denied U.S. Bank's request for an order of foreclosure as moot, reasoning that U.S. Bank could file a renewed Rule 736 application in state court after dismissal of *Huston I*. *Id.* at 8.

And so U.S. Bank did. Six months later, due to plaintiffs' continuing failure to cure their default, U.S. Bank applied for a second Rule 736 home equity foreclosure order in the 165th District Court of Harris County on August 24, 2012. Dkt. 33, Ex. L (the second Rule 736 application); *In*

4

*re Order for Foreclosure Concerning 16519 Town Lake Court, Houston, Texas 77059 Under Tex. R. Civ. P. 736*, No. 2012-48887 (165th Dist. Ct. of Harris Cnty. filed Aug. 24, 2012). Plaintiffs then filed a second declaratory judgment suit against U.S. Bank in the 190th District Court of Harris County on November 29, 2012. Dkt. 1, Ex. B-2 (original petition); *Huston v. U.S. Bank Nat'l Ass'n*, No. 2012-70759 (190th Dist. Ct. of Harris Cnty. filed Nov. 29, 2012) (hereinafter "*Huston II*"). U.S. Bank removed *Huston II* to this court on December 27, 2012. Dkt. 1.

Plaintiffs' live pleading asserts one claim for declaratory relief against U.S. Bank.[3] Dkt. 21 (amended complaint) at 4 ¶¶ 9–11. Plaintiffs claim that U.S. Bank cannot foreclose on the home equity lien because U.S. Bank failed to request a judicial foreclosure in *Huston I*. *Id.* at 4 ¶ 10. Plaintiffs contend that U.S. Bank's request to foreclose was a compulsory counterclaim in the previous suit, and U.S. Bank may not relitigate that issue in this or any other proceeding. *Id.* U.S. Bank answered the amended complaint, Dkt. 26, and filed a counterclaim. Dkt. 14. U.S. Bank claims that it has a right to a judicial foreclosure order because the plaintiffs remain in default on a valid lien and U.S. Bank has met the statutory prerequisites for foreclosure. *Id.* at 4–6.

On October 14, 2013, the parties filed cross-motions for summary judgment. Plaintiffs move for summary judgment on grounds that the evidence establishes, as a matter of law, that U.S. Bank is barred from pursuing a suit for judicial foreclosure because that was a compulsory counterclaim in *Huston I*. Dkt. 32. U.S. Bank moves for summary judgment on plaintiffs' declaratory relief claim, arguing that a judicial foreclosure action is not barred. Dkt. 33 at 8–14. U.S. Bank further moves for summary judgment on its counterclaim for judicial foreclosure and attorneys' fees under the home equity note. *Id.* at 14–20. The motions are ripe for disposition.

---

[3] Plaintiffs also asserted a declaratory judgment claim against State Farm Lloyds, Inc., but that claim was dismissed by this court during the pleadings stage. *See* Dkt. 28.

## III. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *See id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *See id.* "For any matter on which the non-movant would bear the burden of proof at trial . . ., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 322–25. To prevent summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." (former FED. R. CIV. P. 56(e)) (emphasis added).

6

When a plaintiff moves for summary judgment, the roles are reversed, but the burdens are the same for the movant and nonmovant. *See Celotex*, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record without making credibility determinations or weighing any evidence. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). Additionally, the court must disregard all evidence favorable to the moving party that the jury is not required to believe while giving credence to the evidence favoring the non-moving party and the uncontradicted evidence supporting the moving party. *Id.* However, the non-movant cannot avoid summary judgment simply by presenting conclusory "allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galinda v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## IV. ANALYSIS

The court's consideration of the pending motions rests on three issues: (1) *res judicata* and compulsory counterclaims in foreclosure proceedings; (2) the requirements of a counterclaim for judicial foreclosure; and (3) attorneys' fees in home equity loan foreclosure cases. The court will consider each of these issues in turn.

### A. *Res Judicata and Compulsory Counterclaims*

Plaintiffs argue that U.S. Bank cannot foreclose the lien at issue because such a claim was a compulsory counterclaim in *Huston I*, and U.S. Bank's failure to assert the claim in that proceeding bars it from seeking foreclosure in the future under principles of *res judicata*. Dkt. 32 at 3–6. First, as a threshold matter, because *Huston I* concluded in federal court, "[f]ederal law determines the res judicata effect of a prior federal court judgment." *Gulf Island-IV, Inc. v. Blue Streat-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994). Under the doctrine of *res judicata*, or claim preclusion, "'a final judgment on the merits bars further claims by parties or their privies based on the same causes of action.'" *U.S. v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970 (1979)).

Claim preclusion applies when the following four-part test is met: (1) the parties in the second case must be identical to, or in privity with, the parties from the first case; (2) a court of competent jurisdiction rendered the judgment in the first case; (3) the first case ended with a final judgment on the merits; and (4) both cases involve the same claim. *Id.* Here, the parties' dispute revolves around the fourth element, and the court will likewise restrict its analysis to that issue.

Identification of the "same claim" in both cases turns on the scope of the compulsory counterclaim rule. *See Dillard v. Sec. Pac. Brokers, Inc.*, 835 F.2d 607, 609 (5th Cir. 1988) (explaining that a plaintiff-investor's claims against defendant stockbrokers were barred by claim

preclusion if those claims were compulsory counterclaims in a previous suit filed by the brokers against the investor). Federal Rule of Civil Procedure 13(a) provides as follows: "[a] pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a)(1). Rule 13(b) defines a permissive counterclaim as a claim that may be asserted against an opposing party and which "is not compulsory." *Id.* 13(b).

For purposes of its analysis, the court will assume, *arguendo*, that U.S. Bank's suit for judicial foreclosure was a compulsory counterclaim in *Huston I* under Rule 13(a). That assumption, however, does not end the analysis. This court may not mechanically apply Rule 13(a)'s definition of compulsory counterclaims if doing so violates either the U.S. Constitution or the Rules Enabling Act. *Hanna v. Plumer*, 380 U.S. 460, 470–74, 85 S. Ct. 1136 (1965); *Douglas v. NCNB Tex. Nat'l Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992). State law controls over a federal rule if application of the otherwise procedural rule abridges a litigant's substantive right. 28 U.S.C. § 2072; *Douglas*, 979 F.2d at 1130. Moreover, the Fifth Circuit has limited the reach of Rule 13(a) compulsory counterclaims in the foreclosure context. In *Douglas*, the court found that a Texas law doctrine, referred to as the *Kaspar* rule, created an exception to compulsory counterclaims in secured transactions and also applied in federal court. *Douglas*, 979 F.2d at 1130 (citing *Kaspar v. Kellar*, 466 S.W.2d 326, 329 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.)).

In *Kaspar*, Henry Kaspar executed a deed of trust to Ridgell Keller as part of the consideration for the sale of real property. *Kaspar*, 466 S.W.2d at 327. Kaspar later sued for rescission and recovery of a $75,000 down payment, alleging that Keller induced the sale by fraud. *Id.* Keller answered the petition but did not file a counterclaim relating to the note. *Id.* While

9

Kaspar's suit was pending, Keller indicated that he intended to foreclose under the power of sale in the deed of trust, and Kaspar responded by obtaining an injunction restraining the foreclosure. *Id.*

After the case went to trial, the jury found that the sale was not induced by fraud and rendered a take-nothing judgment against Kaspar. *Id.* Keller then proceeded with the foreclosure under the deed of trust, and he purchased the property for $86,000, which was credited towards the note. *Id.* Keller then sued Kaspar to recover the deficiency, and the trial court rendered summary judgment against Kaspar, awarding Keller a total sum of $236,712.85. *Id.* at 327–28.

On appeal, Kaspar claimed that Keller could not recover the deficiency in a subsequent suit because that claim was a compulsory counterclaim under Rule 97(a) of the Texas Rules of Civil Procedure, in Kaspar's suit to cancel the debt. *Id.* at 328. The Texas court of appeals initially found that Keller's claim on the note met "the literal requirements of the Rule so as to constitute it, by its terms, a compulsory counterclaim." *Id.* However, the court found that the circumstances of the case required it to find a common-law exception to the compulsory counterclaim rule. The court reasoned that Keller's claim on the note was permissive in Kaspar's suit, because "the mortgagor should not be permitted to destroy or impair the mortgagee's contractual right to foreclosure under the power of sale by the simple expedient of instituting a suit." *Id.* at 329. The *Kaspar* rule is grounded on the court's concern that the mortgagor's voluntary act should not have the effect of forcing the mortgagee's hand in the election of available remedies. *Id.*

Since the *Kaspar* rule was announced, Texas federal courts have applied the rule several times in diversity cases. In *Douglas*, for example, Donald Douglas and Douglas Drilling, Inc. ("DDI") (collectively, "Douglas") each executed promissory notes in favor of First RepublicBank Abilene, N.A. ("FRBA"), which were secured by personal property and a mineral lease. *Douglas*, 979 F.2d at 1129. Douglas defaulted on the loans three months later. *Id.* Douglas filed a class

action against FRBA in Texas state court, alleging that FRBA committed fraud in obtaining the notes and the notes of other borrowers. *Id.* FRBA removed the case to federal court and answered the petition, but FRBA did not assert any counterclaims on the overdue notes. *Id.* Shortly thereafter the Federal Deposit Insurance Corporation ("FDIC") declared FRBA insolvent and closed the bank. *Id.* The class action continued against the FDIC as receiver, and the district court ultimately dismissed the case. *Id.*

The FDIC then filed suit to foreclose the liens on the property, and Douglas argued that the FDIC could not recover because FRBA did not assert its rights under the notes in the prior proceeding. *Id.* The district court granted summary judgment in favor of the FDIC and found that the compulsory counterclaim rule did not bar the FDIC's recovery. *Id.* The Fifth Circuit affirmed. *Id.* Citing *Kaspar*, the *Douglas* court held as follows:

> The federal counterclaim rule, FED. R. CIV. P. 13(a), is inapplicable if it abridges, enlarges, or modifies the plaintiff's or defendant's substantive rights. Under Texas law, lenders have a substantive right to elect judicial or nonjudicial foreclosure in the event of a default, and debtors have no right to force the lender to pursue a judicial foreclosure remedy. Application of [R]ule 13(a) in the instant case would abridge the lender's substantive rights and enlarge the debtor's substantive rights. Thus, we believe it is appropriate in this case to follow the state's practice of permitting a lender to refrain from filing a counterclaim on overdue notes and to wait to pursue either a judicial or nonjudicial foreclosure remedy.

*Douglas*, 979 F.2d at 1130. The court further reiterated that the purpose of the *Kaspar* rule is to "prevent a borrower from depriving its lender of a choice of remedies." *Id.*

Here, to foreclose its lien securing a home equity loan, U.S. Bank had the option of either seeking a Rule 736 order in an expedited proceeding or filing a claim for judicial foreclosure under the Property Code. TEX. R. CIV. P. 735.3. While both options require judicial oversight, the Rule 736 order provides a streamlined process for a lender to obtain an order and foreclose its lien non-judicially through its bargained-for rights in the security instrument. *Huston*, 359 S.W.3d at 680

11

(recounting the procedural history of the case and explaining that "U.S. Bank applied under Texas Rule of Civil Procedure 736 for an order allowing it to proceed against the Hustons with an expedited, non-judicial foreclosure of their home equity loan"). Plaintiffs argue, however, that upon *Huston I*'s filing in 2010, U.S. Bank was *required* to assert its claim for judicial foreclosure in that proceeding or else lose its right to foreclose. Dkt. 32 at 9–11. That is not the law.

Although *Kaspar* and *Douglas* distinguished between traditional judicial and non-judicial foreclosure remedies, which is not the case with home equity loans, such distinction should not control the disposition of this case. As stated above, while a Rule 736 order obviously requires a judicial proceeding, that order provides an expedited right to an otherwise non-judicial foreclosure of a home equity loan. The *Kaspar* rule should apply without differentiation in cases of any security instrument, including a home equity lien, that provides alternative remedies upon the mortgagor's default. The court thus holds that just as the lender in *Douglas* was not forced to elect between its permissible remedies, U.S. Bank was not required to assert a counterclaim in *Huston I* to preserve the foreclosure rights it asserted in the second Rule 736 proceeding and in *Huston II*. *Douglas*, 979 F.2d at 1130 (holding that the *Kaspar* rule vests a substantive right in the mortgagee to elect its remedies without interference by the mortgagor's voluntary act). The court further holds that claim preclusion principles do not prevent U.S. Bank from pursuing its counterclaim for judicial foreclosure, to which the court now turns.

**B.     *U.S. Bank's Counterclaim for Foreclosure***

U.S. Bank asserts that it is entitled to an order of foreclosure because the summary judgment evidence establishes its right to do so under Texas Property Code § 51.002. Dkt. 33 at 14. To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas

12

Constitution; (3) plaintiffs are in default under the note and security instrument; and (4) plaintiffs received notice of default and acceleration. TEX. PROP. CODE § 51.002.

### 1. The Debt

Neither party disputes that Ralph executed the promissory note in the principal amount of $224,000.00. Dkt. 33, Ex. A-1. As of September 27, 2013, the amount required to satisfy the loan in full is $113,236.70. Dkt. 33, Ex. A at 4 ¶ 10. This amount increases daily with accrued interest charges and other fees, and U.S. Bank has presented sufficient evidence to establish this element as a matter of law.

### 2. The Debt is Secured by a Lien for a Home Equity Loan

U.S. Bank attached to its motion a copy of the security instrument, a lien created under Article 16, Section 50(a)(6) of the Texas Constitution for home equity loans, that was filed in the official Harris County real property records. Dkt. 33, Ex. A-2. This security instrument creates a first lien mortgage on the home and authorized foreclosure upon a default. *Id.* at 1. Plaintiffs do not contest U.S. Bank's evidence or the nature of the lien, and U.S. Bank has met its summary-judgment burden as to this element.

### 3. Plaintiffs' Default

Plaintiffs do not dispute that they have defaulted on their obligations under the note and security instrument, and they have made no payments on the loan since 2009. Dkt. 33, Ex. A at 3 ¶¶ 7–8. U.S. Bank's evidence satisfies this element for a judgment of foreclosure.

### 4. U.S. Bank's Notice of Default and Acceleration

The Property Code requires the mortgage servicer to serve a debtor in default with written notice by certified mail stating that the note is in default and providing at least 20 days to cure before any notice of sale can be given. TEX. PROP. CODE § 51.002(d). The note and security instrument

in this case required the lender to give at least 30 days to cure the default. Dkt. 33, A-1 at 3 ¶ 7(C); Dkt. 33, Ex. A-2 at 12 ¶ 21. U.S. Bank, through its mortgage servicer Wells Fargo, sent plaintiffs the requisite notices of default and acceleration via certified mail on December 13, 2009 and February 15, 2010. Dkt. 33, Ex. A-4 (notice of default and intent to accelerate); Dkt. 33, Ex. A-5 (notice of acceleration of maturity of debt); Dkt. 33, Ex. A at 3–4 ¶¶ 8–9; *see also* Dkt. 33, Aff. to Ex. B (affidavit of Xee Moua) at 3 ¶ 10. Again, U.S. Bank has presented sufficient summary-judgment evidence to establish the last element of its counterclaim. The court grants U.S. Bank's request for an order and judgment of foreclosure against the plaintiffs.

### C.   *Attorneys' Fees*

Lastly, U.S. Bank seeks its attorneys' fees in defending its rights under the note and deed of trust, arguing that fees are recoverable under the contracts and Texas law. Dkt. 33 at 16–18. Plaintiffs respond that U.S. Bank cannot recover fees against them personally in an action regarding the foreclosure of a lien securing a home equity loan. Dkt. 36 at 16–17.

Under general Texas contract law, a party may recover attorneys' fees when such recovery is provided by statute or by contract. *In re Velazquez*, 660 F.3d 893, 895–96 (5th Cir. 2011). However, home equity loans executed pursuant to Article 16, § 50(a)(6) of the Texas Constitution are non-recourse by definition and preclude contractual mortgagor liability. *In re Mullin*, 433 B.R. 1, 17 (Bankr. S.D. Tex. 2010) (Bohm, J.). But while the mortgagor is not personally liable for attorneys' fees, the mortgagee may recover its attorneys' fees, if permitted under the relevant contract, against the mortgaged property after a foreclosure sale. *Id.*

> Here, the security instrument states as follows:
>
> If . . . there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . ., then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the

> Property and rights under this Security Instrument . . . . *Lender's actions can include . . . paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . . No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law. . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.*

Dkt. Ex. A-2 at 7 ¶ 9 (emphasis added). This language makes clear that U.S. Bank may recover its attorneys' fees incurred in defending its rights as a lienholder, insofar as such recovery does not violate the Texas Constitution. *In re Mullin*, 433 B.R. at 18. As explained above, home equity notes are non-recourse as a matter of Texas law, but that rule does not bar recovery of attorneys' fees and other expenses, as provided for in this security instrument, as part of the balance owed under the note. *Id.* These fees may be recovered against the property upon any foreclosure sale.

After reviewing U.S. Bank's evidence regarding attorneys' fees, the court finds that U.S. Bank has met the requirements for recovery of fees under the security instrument. The rates charged by U.S. Bank's counsel are reasonable hourly rates as compared to attorneys with similar experience in a similar market, and the number of hours expended are reasonable as compared to the time and labor required to perform similar legal services. U.S. Bank's motion for summary judgment, with regard to the recovery of attorneys' fees against the property, is granted, and U.S. Bank shall recover attorneys' fees totaling $28,449.00 as part of the note balance that may be satisfied through a foreclosure sale of the property.

## V. CONCLUSION

Plaintiffs' motion for summary judgment (Dkt. 32) is **DENIED**, and U.S. Bank's motion for summary judgment (Dkt. 33) is **GRANTED**. Plaintiffs' claim for declaratory relief against U.S. Bank based on *res judicata* fails because U.S. Bank could have asserted a permissive, not

compulsory, counterclaim for judicial foreclosure in *Huston I*. U.S. Bank's motion for summary judgment on plaintiffs' claim is **GRANTED**, and plaintiffs' motion for summary judgment is **DENIED**. Plaintiffs' claim is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that U.S. Bank's motion for summary judgment on its counterclaim for judicial foreclosure is **GRANTED**. It is further **ORDERED** that U.S. Bank is authorized to foreclose its lien on the property that secured the note indebtedness, to wit:

> Lot Six (6), in Block Nine (9) of Brookwood, Section Two (2), an addition in Harris County, Texas according to the map or plat thereof recorded in Volume 346, Page 14 of the Map Records of Harris County, Texas,

and which has the address of 16519 Town Lake Court, Houston, Texas 77059, pursuant to the note and the security instrument and the Texas Property Code § 51.002.

Finally, U.S. Bank's motion for attorneys' fees is **GRANTED**. In foreclosing its lien, U.S. Bank is entitled to apply the proceeds from the sale of the property against not only principal and accrued, unpaid interest, but also against the attorneys' fees and costs, in the sum of $28,449.00, that it has incurred. U.S. Bank may not seek to recover any deficiency from the plaintiffs in their individual capacities.

Costs of court, recoverable under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920, shall be taxed against the plaintiffs.

The court will enter a separate final judgment consistent with this order.

Signed at Houston, Texas on December 19, 2013.

_____
Gray H. Miller
United States District Judge